John CAPOBIANCO, as Successor in Interest, in his own behalf and for the Norfolk Construction Company, and the United States Trust Company of Boston, Massachusetts

v.

The UNITED STATES.

No. 309–62.

United States Court of Claims.

May 10, 1968.

James R. Treese, Alexandria, Va., attorney of record for plaintiffs, Jackson, Gray & Laskey, Washington, D. C., and Vincent Mottola, Boston, Mass., of counsel.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on March 7, 1968 wherein facts necessary to the opinion are stated. The case is now before the court on a joint motion of the parties, filed April 15, 1968, requesting that the court adopt the commissioner's report filed March 7, 1968. Since the court agrees with the commissioner's findings, opinion and recommended conclusion of law, as modified, as hereinafter set forth, it hereby adopts the same, as modified, as the basis for its judgment in this case without oral argument. Therefore, this case is suspended in this court for a reasonable period so that the case may be returned to the Appeals Board of the Department of Commerce in accordance with the opinion, with plaintiff to advise the court at intervals of not less than 60 days beginning with the date of this opinion, of the status of the case before the Board pursuant to

General Order of April 1, 1968 implementing Rule 100.

Commissioner Bernhardt's opinion, as modified by the court, is as follows:

In Roberts v. United States, 357 F.2d 938, 174 Ct.Cl. 940 (1966); Johnson v. United States, 173 Ct.Cl. 561 (1965), and in Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) and 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), the courts on judicial review were concerned with certain inadequacies in the administrative procedures accorded claimants, and with the judicial consequences of such inadequacies. These consequences ranged from a *de novo* court trial in the *Roberts* case to reversal of the agency actions in the *Johnson* and *Morgan* cases. Speculation as to similar administrative shortcomings prompted the Supreme Court in United States v. Carlo Bianchi & Co., 373 U.S. 709 (1963), to comment at pp. 717, 718, 83 S.Ct. 1409, 1415, 10 L.Ed.2d 652:

* * * There are, we believe, two answers to this contention [i. e., "that the Court of Claims has no power to remand a case such as this to the department concerned" for correction of defects or errors in the administrative proceedings]. *First,* there would undoubtedly be situations in which the court would be warranted, on the basis of the administrative record, in granting judgment for the contractor without the need for further administrative action. *Second,* in situations where the court believed that the existing record did not warrant such a course, but that the departmental determination could not be sustained under the standards laid down by Congress, we see no reason why the court could not stay its own proceedings pending some further action before the agency involved. * * * Such a stay would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny. * * *

■ This is such a case, not only because the departmental decision is not supported by evidence which could qualify as "substantial", but also because the record itself is in part not comprehensible and in other parts not so constituted as to breed confidence in the evidence. Because the record is equally insufficient to sustain a judgment for the claimant, the wise course is to return it to the department concerned for whatever further action it deems warranted, whether that be a decision revised to weigh rather than ignore plaintiff's evidence and to reach other than broad undocumented conclusions, or to undertake at this late date a new hearing which will approach the standards of some of the more established contract appeal boards. In view of the Supreme Court's repeated reminders that factual determinations in actions redressable under contract provisions are initially the exclusive prerogative of the contracting agencies (United States v. Carlo Bianchi & Co., supra; United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966), and United States v. Utah Const. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)), a remand to the originating Department of Commerce Appeals Board rather than a *de novo* trial in this court is advisable, particularly so since the part-time, *ad hoc,* ruleless Board which decided the instant appeal has been superseded by a full-time permanent board operating under formal rules of procedure, thus minimizing the prospect of repeating the oversights of the original proceeding.

■ The plaintiffs [1] seek review of a decision by the earlier Board issued Jan-

---

1. Plaintiff, John Capobianco, filed a petition as successor in interest, in his own behalf and for the Norfolk Construction Company (a partnership consisting of Anthony Carducci and Salvatore Simonelli). Plaintiff, the United States Trust Company of Boston, Mass., interpleaded as a party pursuant to court order dated October 30, 1964, and as a secured party according to an assignment of rights under the contract in question by Norfolk Construction Company.

uary 15, 1962. They allege its decision is not entitled to finality under the Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C. §§ 321, 322 (1964 ed.), in that plaintiffs are entitled to an equitable adjustment in the amount of $408,029.99, due under Contract No. WA–11pr–1781, initially entered into between the Norfolk Construction Company and defendant, acting through the Bureau of Public Roads of the Commerce Department. More particularly, plaintiffs allege that the Board's decision was inadequate by its failure to find a number of facts critical to the controversy; and that what was decided was arbitrary and unsupported by substantial evidence. These allegations are presented in a series of five Assignments of Error [2] that (a) the contract plans and specifications were not followed; (b) Government-provided staking for the road contract was incorrect; (c) changed conditions were encountered; (d) Government supervision was arbitrary and capricious; and (e) payment was not adequate for boulder removal, below grade excavation, and overhaul measurement.

Norfolk Construction Company contracted with the Bureau of Public Roads in September 1949 for the construction of 4.208 miles of mountain road in the White Mountain National Forest, Grafton County, New Hampshire. The contract contained the standard form articles covering Changes, Changed Conditions and Disputes. The plans for the road had been prepared by the New Hampshire State Highway Department which originally intended to build the road. However, Federal funds were approved for the project and the Federal Works Agency, Public Roads Administration, later changed to the Bureau of Public Roads, was designated as the programming and supervising agency to effectuate the contract. The contract was commenced October 24, 1949, and com-

pleted October 23, 1953, a total period of 1,459 calendar days in contrast to the 300 days allowed under the original contract. The contractor's claim to the Bureau of Public Roads was denied by the contracting officer March 26, 1956, and duly appealed to the Appeals Board of the Department of Commerce, which denied the appeal as heretofore noted, except as to the contractor's claim for prompt inspection of culvert pipe which was allowed and is not here in issue. Otherwise, the plaintiff's Assignments of Error parallel his administrative claim.

Without reaching the specific Assignments of Error, I find on the threshold that the administrative proceedings were procedurally inadequate for review purposes for the following reasons:

1. The certified administrative record is incomplete. It omits such vital material as the contract, specifications, drawings, bid tabulation, stop and resume orders, extra work orders, change orders, daily progress reports, Carducci's bankruptcy record, and perhaps other documents involved in the contractor's appeal. Informal requests to counsel have partially supplied these deficiencies. Rule 97, issued May 23, 1967 (later in time than the October 1965 certification of the record in this instance), imposes on the defendant the duty of providing the *entire* administrative record. It cannot be determined with any degree of accuracy precisely what records were considered by the Board.

2. While the Board decision stated that it had "considered the entire record and all contentions made by appellant and the Government, although it has only specifically mentioned those which it deems of primary importance.", it is apparent that the decision of the Board is based exclusively on the testimony of a Mr. Thompson, the Government's sole witness, ignores all of the plaintiff's evidence to the extent of not making a single

2. An interim procedure informally adopted following the decision in United States v. Carlo Bianchi & Co., supra, as a vehicle for orderly presentation of errors, since superseded by Rules of Court 94–100, ef-

fective June 1, 1967. Those cases in the pipeline under the Assignments of Error procedure prior to the promulgation of the new rules were for the most part completed as such.

reference to the evidence adduced for the plaintiff, and finds specifically (with an ambiguous qualification) that there was *no* evidence in support of important claims by the plaintiff.

■ 3. The plaintiff's evidence was presented entirely in the form of a series of six affidavits read aloud and lodged in the record, five of them by individuals who had been on the job at various times as plaintiff's supervisory personnel, and the sixth being an affidavit by a person (presumably an engineer), certifying extensive errors in grade and line stakes placed by the Government. All of the affidavits were admitted in evidence by the Board. Two of the five affiants were present at the hearing and available for questioning, although the cursory questions propounded of them and answers elicited on direct and cross-examination by counsel and the Board members made not the slightest contribution to an understanding of the facts. However, since the affidavits were admitted in evidence by the Board, they were entitled to full consideration. If believed, the facts contained in the affidavits in question would have established much of the plaintiff's contentions, particularly those concerning errors in grade and line stakes, failure of the Government to comply with plans, and arbitrary and capricious orders. Affidavits are not a valid form of proof in a court proceeding, but where they are admitted in evidence by an administrative board, they are then entitled to be weighed along with other evidence and are not to be ignored as they seemingly were in the present case.

■ 4. The testimony of Mr. Thompson, the Government's sole witness and whose testimony (with exhibits) was apparently the exclusive basis for the Board's decision, should have been entitled to reduced weight because of his lack of opportunity for personal observation of many of the incidents on the job which formed the grounds of the plaintiff's major complaints. Mr. Thompson, the District Engineer for the Bureau of Public Roads in the area in which the project was located, occupied a supervisory capacity over this and other contracts in the district and represented the contracting officer. He supervised a Mr. Edgeworth, the Government's Resident Engineer, on the job in suit. Whereas Mr. Thompson visited the job on the average of once a month during the construction seasons, Mr. Edgeworth was there constantly. The plaintiff's allegations of staking errors, errors in measuring excavation and fill, and arbitrary and capricious orders as to permission to use borrow and other matters are directed almost entirely to actions of Mr. Edgeworth. Mr. Thompson's knowledge of these matters, outside of his monthly visits to the jobsite, was necessarily based on advice from Mr. Edgeworth in the form of oral or written reports, or to some extent on occasional conferences with the contractor's personnel. Mr. Edgeworth would naturally be regarded as an indispensable witness to aid in establishing the facts, yet he did not appear as a witness and the record does not disclose the reason. Mr. Thompson's testimony proceeded primarily on a written summary—prepared by himself—of job progress year by year, which summary was obviously based on official contract records which were not in evidence. The summary was admitted in evidence without objection by the plaintiff, without qualification as to whether it was as an aid to refresh the witness' recollection or as a summary of voluminous records, and without explanation covering the absence of the best evidence in the form of official contract records from which the summary was obviously derived. While a contract appeals board representing the head of the contracting agency and not operating under formal rules of procedure is entitled to consider hearsay and other material which a court will consider only under certain safeguards, where the particular hearsay constitutes a major area of support for the administrative decision the situation may possibly verge on a deprivation of due process. This is particularly true where, as here, we are deprived of any opportu-

nity of consulting the basic contract performance data in an effort to verify the correctness of the summary, or evidence favorable to the contractor's contentions has obviously been totally discounted without a word of explanation by the Board.

5. The trial procedure of the Board was further defective in that on several occasions the Government witness, Mr. Thompson, used illustrations to explain the end area method of measuring excavation and the placing of grading stakes, but the transcript account of his testimony is meaningless because of his failure to trace his testimony with identifying marks on the diagrams placed in evidence so that the reviewer may follow the testimony with some degree of comprehension. Experienced presiding officers are careful to avoid this dilemma, always bearing in mind that eventually a cold transcript will have to re-create the testimony intelligibly. Aside from the fact that Mr. Thompson did not participate in the innumerable measurements which the plaintiff accuses of inaccuracy because he (Mr. Thompson) was not on the scene, his assertion that the measurements were accurately made loses all of its force when his description of the method employed cannot be understood.

6. The decision of the Board on each of the contractor's contentions on appeal consists of merely a categorical rejection of the contention without a reasoned analysis of the conflicting evidence or finding of underlying facts meeting the scope of the plaintiff's allegations. Cf. State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291 (1931). A detailed analysis of the entire record leads to the necessary conclusion that the plaintiff's evidence supporting its contentions warrants more attention by the Board than its summary rejection without adequate reasons would indicate was given it. Certain allegations of the plaintiff before the Board, such as the incompetence of the Government's Resident Engineer, is entirely unanswered by the Board despite the existence of extensive evidence pro and con

in the record. To the extent that the Board's decision on the plaintiff's fifth claim (Assignment of Error No. 5) can be understood, it is in part internally inconsistent, in another part oblivious of the role of constructive changes, and throughout unsupported by specific findings sufficient for purposes of review.

Collectively, if not separately, these deficiencies in the administrative process compel a remand to the Board for whatever action seems indicated, without specification or direction. The case should remain in suspension here for a reasonable period for this to be accomplished.

### CONCLUSION OF LAW

Upon the foregoing opinion, which includes the necessary facts made as a part of the judgment herein, the court concludes as a matter of law that this case shall be suspended for a reasonable period in order that it may be returned to the Appeals Board of the Department of Commerce in accordance with the opinion, with plaintiff to advise the court at intervals of not less than 60 days beginning with the date of this opinion of the status of the case before the Board pursuant to General Order of April 1, 1968, implementing Rule 100.